**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **SQUARE D COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CAUSE NO. 1:07-cv-806-WTL-JMS** |
| ) | |
| **BREAKERS UNLIMITED, INC.,** ) | |
| ) | |
| **Defendant/Third-Party Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **PBC SUPPLY, LP, et al.,** ) | |
| ) | |
| **Third-Party Defendants.** ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the motion of Plaintiff Square D Company ("Square D")

entitled Motion for Summary Judgment on Counterclaims for Tortious Interference and Trade

Libel (contained in dkt. #162).  The motion is fully briefed, and the Court, being duly advised,

**GRANTS** the motion for the reasons set forth below.

*Background*

The current configuration of this case resulted from the consolidation of two cases, one

filed by Square D in this Court alleging that Defendant Breakers Unlimited, Ltd., ("Breakers")

sold counterfeit Square D circuit breakers in violation of Square D's trademark rights, and the

other filed by Square D in the Northern District of Illinois alleging that Breakers breached an

earlier settlement agreement entered into between the parties by purchasing circuit breakers from

Showmen Supplies.  At issue in the instant motion are two counterclaims asserted by Breakers.

First, Breakers asserts a claim for tortious interference with its actual and prospective business

relationships, based upon its allegation that Square D brought both lawsuits "in an unlawful attempt to interfere with and disrupt Breakers Unlimited's actual and prospective business relationships."  Second, Breakers asserts claim for trade libel based upon a press release issued by Square D regarding the filing of its trademark infringement claim which Breakers alleges falsely stated that Breakers had sold dangerous counterfeit circuit breakers bearing Square D's trademark.

## Discussion

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).  Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

With that standard in mind, the Court will address the parties' arguments with regard to each of the counterclaims at issue.

*Tortious Interference*

Breakers' second counterclaim[1] asserts a claim for tortious interference with actual and prospective business relationships.  The elements of a claim for tortious interference with a business relationship are as follow: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship."  *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. App. 2005).   Additionally, under Indiana law, "this tort requires some independent illegal action." *Id.*, (citing *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003)).  In other words, "[i]n the State of Indiana, an element necessary to prove this cause of action is that a defendant acted illegally in achieving his end."  *Watson Rural Water Co., Inc. v. Indiana Cities Water Corp.*, 540 N.E.2d 131, 139 (Ind. App. 1989).

Square D argues that Breakers is unable to satisfy this final element because the filing of a lawsuit does not constitute illegal action unless the suit was a "mere sham." While the Indiana Supreme Court has not spoken directly on this issue, this Court determines that the filing and/or prosecution of a legitimate–that is, not frivolous–lawsuit cannot form the basis of a tortious interference claim under Indiana law, although perhaps the issue is better analyzed under the "justification" prong rather than the illegal action requirement.  If a party has a legitimate legal claim against a competitor, the party is "justified" in pursuing that claim, even if by doing so it might interfere with its competitor's business relationships.[2]

---

[1]Breakers' first counterclaim was the subject of another ruling.

[2]It is possible that if the Indiana Supreme Court considered the issue it might agree with Illinois's rule that "the only cause of action recognized for the wrongful filing of a lawsuit is one

Breakers disputes Square D's characterization that its claim is based upon the filing of a

lawsuit and argues the following:

> [Square D's] argument fails for the simple reason that Square D did more than
> "file a lawsuit."  As alleged in [Breakers'] counterclaim, Square D filed <u>two</u>
> lawsuits, one in Illinois and one in Indiana, in an effort to disrupt [Breakers']
> business and thereby preserve "Square D's market share and the ability to
> artificially inflate pricing for Square D products. . . .  Square D's anticompetitive
> actions easily satisfy Indiana's liberal standard for "illegal action."

Breakers Response at 8-9.  Regardless of how the claim is characterized, the analysis is the

same, and the relevant question is whether Square D acted without justification when it filed

(and pursued) its lawsuits against Breakers.

With regard to Square D's claim for breach of the settlement agreement, the answer

clearly is that it did not, inasmuch as the Court has granted summary judgment on behalf of

Square D on that claim.  And while the merits of Square D's trademark infringement claim have

not yet been resolved, Breakers offers no evidence at all to support its assertion that Square D

filed its lawsuits "for the unlawful purpose of fixing and inflating prices."  Indeed, while

Breakers has denied the merits of Square D's trademark infringement claim, it has not even

expressly asserted that the claim is frivolous, and certainly has presented no evidence that would

support such an assertion.  Summary judgment is the "put up or shut up" moment in a case, *see*

*generally Koszola v. Bd. of Educ. of City of Chicago,* 385 F.3d 1104, 1111 (7th Cir. 2004), and

Breakers has simply failed to put up any evidence to support its claim for tortious interference.

Accordingly, Square D's is entitled to summary judgment on that claim.

---

for malicious prosecution or abuse of process."  *Havoco v. America, Ltd. v. Hollobow,* 702 F.3d
643, 647 (7th Cir. 1983) (citing *Lyddon v. Shaw*, 56 Ill.App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d
685 (2d Dist.1978)).  This Court need not decide that question, however, because it is clear that a
tortious interference claim cannot be maintained based upon the facts of record in this case.

*Trade Libel*

Breakers' third counterclaim, entitled "trade libel product infringement," arises out of a press release by Square D which coincided with the filing of this trademark infringement suit. Specifically, Breakers alleged in its counterclaim that "[t]he Press Release stated that [Breakers] had sold counterfeit circuit breakers bearing Square D's trademark" and that "Square D knew of the statement's falsity and lacked a good faith belief in the statement's truth." Counterclaim ¶¶ 18-19. The counterclaim then continues to refer to this "false statement." Not surprisingly, in its initial brief in support of the instant motion Square D points out that the press release does not contain such a statement; rather, the press release states that its lawsuit asserts that Breakers has sold counterfeit circuit breakers. That statement was unequivocally true; therefore, Square D asserts, correctly, that it cannot be libelous.

In its response, Breakers argues that "[i]n a ploy to obtain dismissal of the trade libel counterclaim, Square D blatantly mischaracterizes the contents of its June 22, 2007 press release." Breakers Response at 13.[3] Actually, as noted, what Square D did was respond directly to the claim made by Breakers in its counterclaim–that the press release contained the statement that Breakers had sold counterfeit circuit breakers. Breakers objects to the fact that Square D refers to "only a fraction of the press release," but that is, in fact, what Breakers did in its counterclaim, referring not to the press release as a whole, but to the "false statement" allegedly contained therein.

---

[3]The Court has now read several of Breakers' briefs relating to various motions and notes, regrettably, that each of them is replete with this type of hyperbolic rhetoric. Breakers' counsel presumably believes that such attacks constitute vigorous advocacy for their client; however, in reality they simply make the briefs unpleasant to read and force the Court to expend time and energy wading through the unnecessary parts to get to the relevant arguments.

Now, in response to the instant motion, Breakers asserts that several paragraphs of the press release, as well as its headline, read together, "falsely state or imply that Breakers Unlimited is a counterfeiter, that all unauthorized Square D products are counterfeits, and that such products may cause 'deadly hazards.'"  This argument is an expansion of the assertions made in the counterclaim, and while it was not improper for Breakers to make this expanded argument–inasmuch as summary judgment often provides the opportunity for a party to expand upon the minimal factual assertions required by notice pleading–Square D was not required to anticipate this argument in its opening brief and had every right to respond to it in its reply brief. Therefore, Breakers' assertion in its surreply that Square D is guilty of "bait-and-switch tactics" and its reply therefore should be stricken is not well-taken.

Turning to the merits of the motion for summary judgment as it has now been briefed by the parties,[4] Breakers points to the following statements in the press release that it alleges "either directly or indirectly libeled" it:

- **SQUARE D FILES SUIT AGAINST BREAKERS UNLIMITED FOR SELLING COUNTERFEIT SQUARE D PRODUCTS.** [headline]

- Square D has every intention of pursuing counterfeiters up and down the

---

[4]The Court notes that neither party discusses whether Indiana recognizes the tort of "trade libel" or points to any Indiana cases involving such a claim.  The Court will assume, as the parties apparently do,  that such a claim is viable under Indiana law.  *Cf. Sanderson v. Indiana Soft Water Services, Inc.*,  2004 WL 1784755, 7 (S.D. Ind. 2004) ("What Sanderson calls "product disparagement" has also been described by commentators as "disparagement of property," "slander of goods," "commercial disparagement," "trade libel," and "injurious falsehood." . . .  Although Sanderson has not cited any application of the tort in Indiana, it appears that there is at least some limited recognition of the cause of action in the state. *See generally, Raybestos Products Co. v. Younger*, 54 F.3d 1234, 1236 (7th Cir.1995) (applying Indiana law; affirming without discussion of relevant merits jury's verdict in favor of plaintiff on defamation and injurious falsehood claims)).

distribution chain. We will stop at nothing to preserve the integrity of our
products and protect innocent consumers from the serious health and
safety hazards associated with counterfeit products.

- Distributors need to be aware that there are hidden and potentially deadly
  hazards associated with counterfeit circuit breakers [and by] identifying
  counterfeit products and reporting counterfeits, distributors can save lives.

- In order to prevent the potential purchase of counterfeit products,
  customers should continue to purchase their Square D products from
  authorized Square D distributors.

A statement must be false in order to constitute libel of any sort. *Doe v. Methodist Hosp.*, 690
N.E.2d 681, 687 (Ind.,1997) ("Dissemination of truthful but defamatory private facts has
apparently never been civilly actionable as libel or slander in Indiana."). Out of these
statements, only the headline relates directly to Breakers, and the headline is, in fact, true;
Square D had filed suit against Breakers for selling counterfeit Square D products. However,
Breakers suggest that read together, all of these statements "falsely state or imply that Breakers
Unlimited is a counterfeiter, that all unauthorized Square D products are counterfeits, and that
such products may cause 'deadly hazards.'" Breakers Response at 16. Assuming this is true,
that is not the end of the inquiry, however.

As Square D points out in its reply brief,[5] under Indiana law "[b]oth a public figure and a

---

[5]Again, the Court notes that Square D was entitled to raise this argument for the first time
in its reply brief because Breakers provided an expanded explanation of its trade libel claim in its
response to the motion for summary judgment. The Court further notes that Breakers filed a
surreply and therefore had the opportunity to respond to this new argument, although
unfortunately it chose to spend most of it lambasting Square D for raising a new argument in its
reply brief.

private individual bringing a defamation action over a matter of public or general concern must prove by clear and convincing evidence that the defendant made the alleged defamatory statement with 'actual malice.'" *Shine v. Loomis*, 836 N.E.2d 952, 958 (Ind.App. 2005).  The statements at issue here involve the existence of counterfeit circuit breakers in the market and their relative safety, something which is a matter of public concern.  *Cf. American Broadcasting Cos., Inc., v. Smith Cabinet Mfg. Co., Inc.*, 312 N.E.2d 85, 90-91 ("Thus, it can hardly be contended that a television documentary dealing with the causes of home fires is not a matter of public interest.").  In order to prevail, then, Breakers must prove that Square D acted with actual malice when it made its press release.

"Where a factual dispute concerns actual malice, the appropriate question on summary judgment is whether the evidence in the record could support a reasonable jury finding that a plaintiff has shown actual malice by clear and convincing evidence."  *Madison v. Frazier*, 539 F.3d 646, 658 (7th Cir. 2008).  "Actual malice, as an element of the tort of defamation, exists when the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Shine*, 836 N.E.2d at 958.

> The defendant's actual state of mind is a critical factor in the analysis of whether a statement was made with reckless disregard.  The defendant's state of mind is a subjective fact, and it may be shown by indirect or circumstantial evidence.  The question of whether there is sufficient evidence to support a finding of actual malice is a question of law to be determined by the court.  This rule is based on two important considerations: "(1) the 'national commitment to the free exchange of ideas, as enshrined in the First Amendment;' and (2) the recognition that '[j]udges as expositors of the Constitution' have a duty to 'independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of actual malice.

*Id.* at 959.

Breakers has pointed to no evidence from which a reasonable jury could determine–by

clear and convincing evidence or otherwise–that Square D acted with actual malice.  Breakers

argues that Square D has not yet proven that Breakers sold counterfeit circuit breakers and that

"there is no evidence that the circuit breakers allegedly sold by Breakers Unlimited pose an

actual danger to property or person."  Breakers Surreply at 7.  That may be true, but the relevant

inquiry is not whether counterfeit circuit breakers actually are dangerous, but whether when

Square D stated in its press release that the sale of counterfeit circuit breakers pose serious

dangers to consumers, it did so knowing that the statement was false or entertaining serious

doubts about its truthfulness.  Because Breakers has not submitted evidence from which such a

finding could be made, Square D is entitled to summary judgment on Breakers' trade libel claim.

    SO ORDERED:    05/19/2009

                                       Hon. William T. Lawrence, Judge
                                       United States District Court
                                       Southern District of Indiana

Copies to all counsel of record via electronic notification