UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SQUARE D COMPANY, | ) |
|    Plaintiff, | ) ) ) |
|    vs. | )   CAUSE NO. 1:07-cv-806-WTL-JMS ) |
| BREAKERS UNLIMITED, INC., | ) ) |
|    Defendant/Third-Party Plaintiff, | ) ) |
|    vs. | ) ) |
| PBC SUPPLY, LP, et al., | ) ) |
|    Third-Party Defendants. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the motion of Third-Party Defendants Pioneer Breaker & Control Supply Co., PCB Supply, LP, and Tamas Toldy (collectively "Pioneer") entitled Motion for Summary Judgment on Breakers Unlimited's Breach of Contract, Indemnity and Fraud Counts (dkt. #165). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion as to the indemnity and fraud claims and **DENIES** the motion as to the breach of contract claim for the reasons set forth below.

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable

inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## Relevant Facts

The relevant facts of record viewed in the light most favorable to Breakers, the non-moving party, are as follow. Breakers and Pioneer had a long-standing relationship that involved Breakers purchasing circuit breakers from Pioneer which it then resold. Between May 2005 and January 2006 Breakers placed five orders with Pioneer for a total of 54,400 Square D QO 2020 circuit breakers. Pioneer filled those orders with multiple shipments, including one on January 3, 2006, which consisted of 33,600 circuit breakers ("January Shipment").

On April 7, 2006, Breakers learned that Square D had filed suit against Scott Electric Company ("Scott") alleging that Scott had sold counterfeit Square D breakers. Concerned by rumors in the industry that there may be other counterfeit Square D breakers in the marketplace, Breakers contacted Pioneer and attempted to return the circuit breakers from the January Shipment that it had not yet resold. Because it had no evidence that the circuit breakers in question were, in fact, counterfeit, Breakers gave no reason for its request to return the circuit breakers and did press Pioneer when it refused to take them back. However, Breakers

quarantined the remaining circuit breakers and did not sell any more of them after that point.

Square D filed this suit on June 22, 2007, alleging that Breakers had sold counterfeit Square D QO115 circuit breakers to a company in Maine and other unnamed companies. On August 14, 2007, Square D inspected Breakers' inventory and alleged that its inspection revealed that the January Shipment included counterfeit Square D circuit breakers. On August 16, 2007, Breakers sent a letter to Pioneer informing Pioneer that Square D had declared the circuit breakers in the January Shipment to be counterfeit and demanding that Pioneer refund the purchase price and pay Breakers an additional amount as compensation for its trouble. When Pioneer refused, Breakers filed its third-party complaint against it.

## Discussion

Breakers asserts three counts against Pioneer in its third-party complaint: indemnification, breach of contract, and fraud. Pioneer seeks summary judgment on all three counts.

### *Fraud*

In its motion, Pioneer asserts that it is entitled to summary judgment on its fraud claim for several reasons, including that Pioneer believed that the circuit breakers it sold to Breakers were genuine Square D circuit breakers. In response, Breakers concedes that it has no evidence to contradict Pioneer's evidence to that effect. However, rather than conceding that Pioneer is therefore entitled to summary judgment on the fraud claim, Breakers states that it "withdraws" the claim and "reserves the right to seek leave to reinstate its fraud claim if evidence to support it is ultimately adduced at trial." Breakers Response at 1 n.1. Breakers has no such right to reserve; Pioneer has demonstrated that it is entitled to summary judgment on the fraud claim and

3

therefore its motion is **GRANTED** as to that claim.

*Breach of Contract*

The parties agree that the contract between them was for the sale of goods and therefore was governed by the Uniform Commercial Code ("UCC"). Pioneer argues that it is entitled to summary judgment on Breakers' beach of contract claim because Breakers accepted the circuit breakers and failed to properly revoke its acceptance. Breakers argues that it did not accept the goods, but rather rejected them via its letter dated August 16, 2007.[1]

Pursuant to the UCC, as codified by Indiana,[2] "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." Ind. Code 26-1-2-602. "What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action"; "[a]n action is taken 'seasonably' when it is taken at or within the time agreed or, if no time is agreed, at or within a reasonable time." Ind. Code 26-1-1-204(2)&(3). Further, "[a]cceptance of goods by the buyer precludes rejection of the goods accepted." Ind. Code 26-1-2-607(2). Finally, Ind. Code 26-1-2-606(1) provides:

> Acceptance of goods occurs when the buyer:
>
> > (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
>
> > (b) fails to make an effective rejection (IC 26-1-2-602(1)), but such acceptance does not occur until the buyer has had a reasonable

---

[1] Breakers concedes that its April 2006 attempt to return the circuit breakers without giving a reason was not an effective rejection.

[2] The parties agree that Indiana law applies to Breakers' breach of contract claim.

>	opportunity to inspect them; or
>
>	(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

Pioneer argues that Breakers accepted the January Shipment when it failed to reject it within a reasonable time and when it sold some of the circuit breakers contained in the shipment, thereby taking an action that was inconsistent with Pioneer's ownership of the circuit breakers. Whether rejection occurred within a reasonable time is a question of fact that would normally preclude summary judgment. In this case, however, no reasonable jury could determine that Breakers rejected the January Shipment within a reasonable time. Breakers asserts that it did not even suspect that the circuit breakers in the January Shipment might be counterfeit until the Scott case was filed by Square D in April 2006, some three months after it received the January Shipment. In the meantime, it paid the invoice for the January Shipment and apparently sold over 2000 of the circuit breakers. The only reasonable inference that can be drawn from these undisputed facts is that Breakers accepted the circuit breakers long before its August 16th letter; taking as true its assertion that it did not have any inkling that they were counterfeit before the Scott case was filed, it simply had no reason not to accept them.

However, Breakers argues in the alternative that its August 16th letter served as its notice of revocation of its acceptance.

>	(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
>	(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>
>	(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before

5

> acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

Ind. Code 26-1-2-608. Pioneer argues that Breakers did not revoke its acceptance within a reasonable time and that the clock started ticking when Breakers first suspected that the circuit breakers might be counterfeit. However, both when Breakers should have discovered that the circuit breakers were counterfeit[3] and how much time after that point was "reasonable" are questions of fact for the jury to determine. Based upon the evidence of record viewed in the light most favorable to Breakers, a reasonable jury could determine that Breakers did revoke its acceptance of the January Shipment within a reasonable time after it should have discovered that the circuit breakers were counterfeit.

Pioneer, pointing to the fact that the circuit breakers were repackaged by Breakers and shipped to various warehouses for resale, also argues that the circuit breakers in question had undergone a "substantial change in condition" such that Breakers could not revoke its acceptance of them in August 2007. The Court finds as a matter of law that repackaging and moving the circuit breakers did not constitute a substantial change in their condition; each circuit breaker was still in the same condition that it was in when it was shipped.[4] However, as Breakers

---

[3]The Court notes that Square D's allegation that the circuit breakers are counterfeit, which Breakers vigorously disputes, remains at issue.

[4]More interesting is Pioneer's assertion–made for the first time in its reply brief–that Breakers cannot trace which of the circuit breakers in its inventory were part of the January Shipment. Pioneer makes this assertion in support of its substantial change in position argument, to which it is irrelevant. Rather, if the assertion is true–and Pioneer has not fleshed out the argument enough to demonstrate that it is–that would defeat Breakers breach of contract claim

essentially concedes, it could not revoke its acceptance of the circuit breakers it had already resold; at trial part of its burden of proof will be how many of the circuit breakers from the January Shipment remain in its possession.

For the reasons set forth above, summary judgment is not appropriate on Breakers' claim for breach of contract. However, the Court has determined as a matter of law that Breakers did not timely reject the January Shipment, and Breakers will not be permitted to argue rejection at trial.

*Indemnification*

Breakers asserts a claim for indemnification against Pioneer in its third-party complaint but does not identify the source of its alleged indemnification right. As there is no evidence of any express contractual right of indemnification between the parties, in order to prevail Breakers must establish the existence of an implied right of indemnification. Inasmuch as the claim for which Breakers seeks to be indemnified (should it be held liable to Square D) is one for trademark infringement that arises under federal law, Breakers' citation to cases involving implied indemnity under Indiana law is of no help to it. *Cf. Lehman Brothers, Inc. v. Wu,* 294 F.Supp.2d 504, 505 (S.D.N.Y. 2003) ("[W]hether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law."). Rather, "indemnification will be available in this case only if such a right can be implied under the statute or rule or is available as a matter of federal common law." *King v. Gibbs*, 876 F.2d 1275 (7th Cir. 1989) (citing *Texas Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 638 (1981)).

---

for an entirely different reason, as Breakers would be unable to prove that the January Shipment was defective.

Breakers cites to no authority that suggests that there is an implied right of indemnification in a federal trademark infringement case; indeed, Breakers does not even make the argument that it has a right to indemnification under federal law. Accordingly, the Court determines that Pioneer is entitled to summary judgment on Breakers' indemnification claim.

SO ORDERED: 05/19/2009

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Thomas B. Bays
Norris Choplin & Schroeder LLP
tbays@ncs-law.com

Joel L. Dion
Blank Rome LLP
dion-j@blankrome.com

Robert David Epstein
Epstein Cohen Donahoe & Mendes
rdepstein@aol.com

Jonathan D. Jay
Leffert Jay & Polglaze P.A.
jjay@ljp-iplaw.com

Nicholas S. Kuhlmann
Leffert Jay & Polglaze, P.A.
nkuhlmann@ljp-iplaw.com

Brian W. Lewis
Wildman Harrold Allen & Dixon
lewis@wildman.com

Nelson A. Nettles
Norris Choplin & Schroeder LLP
nnettles@ncs-law.com

Nicole Nocera
Wildman, Harmed, Allen & Dixon LLP
nocera@wildman.com

Timothy D. Pecsenye
Blank Rome LLP
pecsenye@blankrome.com

James Brian Vogts
Wildman Harrold Allen & Dixon LLP
vogts@wildman.com

Edward Timothy Walker
Wildman, Harrold, Allen & Dixon LLP
walker@wildman.com

Philip A. Whistler
Ice Miller LLP
philip.whistler@icemiller.com

8