UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SQUARE D COMPANY, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|    vs. ) | CAUSE NO. 1:07-cv-806-WTL-JMS |
| ) | |
| BREAKERS UNLIMITED, INC., ) | |
| ) | |
|    Defendant/Third-Party Plaintiff, ) | |
| ) | |
|    vs. ) | |
| ) | |
| PBC SUPPLY, LP, et al., ) | |
| ) | |
|    Third-Party Defendants. ) | |

**ENTRY ON MOTIONS TO EXCLUDE TESTIMONY OF DANIEL F. GILL**

   This cause is before the Court on separate motions (dkt. no. 199 and part of dkt. no. 206) filed by Defendant Breakers Unlimited, Inc. ("Breakers") and Third-Party Defendants Pioneer Breaker & Control Supply Co., PCB Supply, LP, and Tamas Toldy (collectively "Pioneer") (all collectively referred to as "Defendants" in this Entry) in which they seek to exclude a portion of the proposed testimony of Plaintiff's damages expert Daniel F. Gill. The motions are fully briefed, and the Court, being duly advised, **DENIES** the motions for the reasons set forth below.

      Plaintiff Square D Company ("Square D") accuses Breakers of violating the Lanham Act by selling counterfeit circuit breakers with Square D's trademark. Breakers, in turn, accuses Pioneer of selling it the allegedly counterfeit circuit breakers. At issue in the instant motion are the opinions of Gill relating to Square D's damages; specifically the amount of profit Square D lost as a result of Breakers' sale of the counterfeit circuit breakers (assuming they are, in fact, determined to be counterfeit).

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Defendants[1] argue that Gill's expert report and proposed testimony fail to satisfy the requirements of Rule 702 in several respects, each of which is addressed, in turn below.

First, the Defendants argue that Gill does not have the qualifications or experience necessary to serve as an expert on lost profits in this case. The Court disagrees. Gill was certainly qualified to make the calculations that he made based upon the information and assumptions he was given by Square D. The Defendants' real issue is with the reliability of that information and those assumptions, something that is certainly relevant to whether Gill's testimony is admissible under Rule 702, but not relevant to his qualification to provide that testimony. Similarly, the Defendants assert that the methodology used by Gill does not provide a precise enough estimation of damages to satisfy Square D's legal burden; again, that is a valid consideration under Rule 702, but does not speak to whether Gill is qualified to testify about the methodology he used and the calculations he made.[2]

---

[1] For the sake of simplicity, the Court will refer to the Defendants collectively throughout this Entry, even though some of the arguments discussed are not advanced by all of the Defendants.

[2] While the Defendants' characterization of Gill's analysis as "a simple arithmetic computation that any lay person could perform with a dime-store calculator" is a bit of an exaggeration, the essential point is correct; Gill's role was primarily one of making mathematical computations. To the extent that the Defendants imply that Gill's computations would not be

Next, the Defendants argue that Gill's calculation of Square D's gross lost profits improperly assumes that its own sales of genuine circuit breakers would have increased by exactly the same number of counterfeit circuit breakers sold by Breakers if those counterfeit circuit breakers had not been in the market. Gill did not adjust his analysis to take into account the law of demand, which states that "demand for a given product has a direct and discernable relationship to its price . . . [t]o wit, as the price of a product increases, demand for that product decreases." Breakers' Brief at 7-8. Because Square D's prices were substantially higher than those charged by Breakers, the Defendants argue that the law of demand dictates that the total number of circuit breakers sold would have been smaller if they were only available at the higher prices charged by Square D instead of the lower prices charged by Breakers. Breakers' expert does not offer any calculation of his own taking into account the law of demand, but rather only criticizes Gill for failing to do so; Pioneer's expert does conduct such a calculation, using the Lerner Index to calculate the price elasticity of demand for the circuit breakers.

Gill explained in his deposition that he believed the effect of Square D's higher prices on demand for the circuit breakers would be minimal given the particular circumstances of the market. Square D also points to facts that support this assumption. Square D is the only source of the circuit breakers in question; it has no competitors. In addition, as Gill noted, the circuit breakers are not the type of product that a purchaser would decide to do without because of a price difference of a few dollars, given the lack of an alternative. Assuming that Square D proffers this evidence at trial, the Court determines that it will have provided a sufficient factual

---

useful to the jury because the jurors could do them themselves, the Court disagrees. The computations involved are complex enough that it is preferable to have them performed by an expert rather than relying on the mathematical prowess of the jurors.

basis for Gill's decision to use the methodology that he did and thus will have demonstrated that Gill's opinion is sufficiently reliable to permit it to be admitted at trial. Whether the methodology used by Pioneer's expert is likely to arrive at a more accurate estimation of Square D's lost profits than Gill's given all of the relevant facts is something that the jury can consider after hearing both experts' direct testimony and cross-examination.

Indeed, even assuming that Pioneer's expert's calculation is more accurate than Gill's does not compel the conclusion that Gill's methodology is an unacceptable way to calculate lost profits in a Lanham Act case. *Cf. Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.,* 424 F.3d 363, 374 (3rd Cir. 2005) (discussing the fact that the standard method of measuring damages in price enhancement antitrust cases is overcharge, not lost profits, even though overcharge ignores the fundamental law of demand while lost profits takes it into account). "[T]he Lanham Act confers upon district courts wide discretion in determining a just amount of recovery for trademark infringement. Unlike in the case of future lost profits caused by breach of contract, Lanham Act damages may be awarded even when they are not susceptible to precise calculations." *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008) (citations omitted).

> When determining damages in an unfair trade practices case, the courts distinguish between the amount of proof needed to show "that some damages were the certain result of the wrong" and the amount of proof needed to ascertain the exact amount of damage. *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 267, 66 S.Ct. 574, 581, 90 L.Ed. 652 (1946) (Frankfurter, J., dissenting on other grounds). The plaintiff is held to a lower burden of proof in ascertaining the exact amount of damages because, "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Id.* at 265, 66 S.Ct. at 580. However, the plaintiff may not recover if he fails to prove that the defendant's actions caused the claimed harm.

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 745 (7th Cir. 1985). In this case

there clearly is evidence to support a finding that Square D suffered some damages from Breakers' sales of the circuit breakers at issue (assuming, of course, that they are found to be counterfeit); indeed, Pioneer's expert's own analysis provides such evidence. Of course it is impossible under any methodology to determine the exact amount of those damages, absent, perhaps, inventing a time machine and using it to go back in time and prevent the counterfeit sale. Pioneer's expert cannot profess to provide *the correct* answer by using the Lerner Index, but only what he believes to be a *more correct* answer, because his methodology simply provides a theoretical way to predict how a market likely would perform given certain circumstances. Thus, the fact that Gill's methodology involves some speculation regarding exactly how many circuit breakers Square D would have sold but for the alleged counterfeit sales does not render his testimony insufficient to support an award for lost profits. *Cf. Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614 (9th Cir. 1993) (finding not clearly erroneous a court's "somewhat crude" method of determining damages that relied upon an inference that was "not inexorable," but also not "fanciful" because "[m]uch legal reasoning depends on that very kind of extrapolation from limited data").

      The Court rejects the Defendants' second argument for the same reasons. The Defendants point out that Square D has no proof to support Gill's assumption that all of the counterfeit circuit breakers would have been replaced in the market by circuit breakers purchased from Square D or its authorized dealers. Again, however, it is impossible to determine with certainty the number of Breakers' customers who would have purchased circuit breakers from other "gray market" sources rather than from Square D or its authorized dealers. A plaintiff who has suffered injury from a Lanham Act violation is not subject to such an exacting burden of proof, however.

As the leading treatise on the issue of lost profits explains:

> [T]he [reasonable certainty] rule applies only to the fact of damages, not to the amount of damages. Proof of the fact of damages in a lost profits case means proof that there would have been some profits. If plaintiff's proof leaves uncertain whether plaintiff would have made any profits at all, there can be no recovery. But once this level of causation has been established for the fact of damages, less certainty (perhaps none at all) is required in proof of the amount of damages. While the proof of the fact of damages must be certain, proof of the amount can be an estimate, uncertain or inexact.

Robert L. Dunn, *Recovery of Damages for Lost Profits* § 1.3 at 11. It is particularly in the area of quantifying the amount of lost profits that courts impose the risk of uncertainty on the breaching party whose breach gave rise to the uncertainty.

*Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1367 (7th Cir. 1996).[3]

The Court determines that Gill's testimony regarding lost profits constitutes admissible evidence on that issue given this standard of proof.

Finally, the Defendants take issue with some of the data underlying Gill's calculations. Square D concedes that it failed to provide Gill with its incremental costs of transportation and therefore Gill's calculation failed to take that admittedly relevant cost into account. However, Square D has since provided that information to the Defendants and Gill's testimony at trial will correct that mistake. In addition, the Defendants assert that Gill should have "tested" the data Square D provided regarding its gross profit margin, which the Defendants apparently believe is

---

[3] The Defendants' argument that this principle applies only in cases involving new businesses is not supported by the opinion in *Mid-America* as a whole. Significantly, one of the cases to which it cites, *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1372-73 (7th Cir. 1990), did not involve any discussion of what the Defendants term the "new business rule," and yet the court there found that "[i]f Olympia failed to use its best efforts, a jury question, then it was a reasonable inference that the hotel would make less money for its owner, Racine. How much less was unclear. But as it was not Racine's fault that this quantity could not be estimated with precision, the jury was allowed to guess . . . .").

so high that it cannot be believed. The Defendants are certainly free to challenge this underlying data on cross-examination; however, they have not presented any evidence at this point that supports their bare assertion that the data is incorrect, thus rendering Gill's opinions based thereon unreliable.

For the reasons set forth above, the Defendants' motions to exclude Gill's testimony regarding the issue of lost profits is **DENIED**.

SO ORDERED: 05/21/2009

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Thomas B. Bays
Norris Choplin & Schroeder LLP
tbays@ncs-law.com

Joel L. Dion
Blank Rome LLP
dion-j@blankrome.com

Robert David Epstein
Epstein Cohen Donahoe & Mendes
rdepstein@aol.com

Jonathan D. Jay
Leffert Jay & Polglaze P.A.
jjay@ljp-iplaw.com

Nicholas S. Kuhlmann
Leffert Jay & Polglaze, P.A.
nkuhlmann@ljp-iplaw.com

Brian W. Lewis
Wildman Harrold Allen & Dixon
lewis@wildman.com

Nelson A. Nettles
Norris Choplin & Schroeder LLP
nnettles@ncs-law.com

Nicole Nocera
Wildman, Harmed, Allen & Dixon LLP
nocera@wildman.com

Timothy D. Pecsenye
Blank Rome LLP
pecsenye@blankrome.com

James Brian Vogts
Wildman Harrold Allen & Dixon LLP
vogts@wildman.com

Edward Timothy Walker
Wildman, Harrold, Allen & Dixon LLP
walker@wildman.com

Philip A. Whistler
Ice Miller LLP
philip.whistler@icemiller.com