## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SQUARE D COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 1:07-cv-806-WTL-JMS |
| | ) | |
| BREAKERS UNLIMITED, INC., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PBC SUPPLY, LP, et al., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

### ENTRY ON MOTIONS TO EXCLUDE TESTIMONY OF
### REED, WHITEHORN AND REZAC

This cause is before the Court on several motions (dkt. nos. 202, 203, 204, and 206), all of which seek to exclude certain anticipated testimony of three of Plaintiff's expert witnesses, Ryan Whitehorn, Willard Rezac, and Christopher Reed. The motions are fully briefed, and the Court, being duly advised, **GRANTS IN PART, DENIES IN PART, AND TAKES UNDER ADVISEMENT IN PART** each of the motions for the reasons set forth below.

Plaintiff Square D Company ("Square D") accuses Defendant Breakers Unlimited, Inc. ("Breakers") of violating the Lanham Act by selling counterfeit circuit breakers with Square D's trademark. Breakers, in turn, accuses Third-Party Defendants Pioneer Breaker & Control Supply Co., PCB Supply, LP, and Tamas Toldy (collectively "Pioneer") of selling it the allegedly counterfeit circuit breakers. Both Breakers and Pioneer deny that the accused circuit breakers are counterfeit. At issue in the instant motion is the anticipated testimony of Whitehorn, Rezac and Reed regarding their opinions as to (1) whether the accused breakers were manufactured by

Square D ("authenticity testimony"); and (2) the hazards posed by counterfeit circuit breakers to the public ("hazard testimony").  This type of opinion testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Defendants' argue that the proposed testimony of Whitehorn, Rezac and Reed falls short of Rule 702's requirements in several respects.

*Authenticity Testimony*

Breakers' first argument with regard to the authenticity testimony is wholly without merit and therefore easily disposed of.  Whitehorn, Rezac and Reed each inspected a sample of the accused circuit breakers and opined, based on their inspections, that they were not genuine Square D products.  While Breakers apparently[1] does not believe that their testimony is inadmissible, presumably recognizing that it is relevant and would be helpful to the jury, it nonetheless argues that the testimony fails to satisfy Rule 702 and therefore does not constitute "expert testimony" because it is "not based on any reliable scientific method or other analytic techniques"  and "none of the testimony reaches the level of scientific testing or analysis necessary for admissibility as <u>expert opinion</u> and none deserves to be branded with the

---

[1]Breakers seems to take inconsistent positions with regard to the authenticity testimony. At one place in its brief it states that "the proffered factual testimony is not per se excludable (provided proper foundation and other proper bases are given for its admission)," Breakers Brief at 15; however, its prayer for relief and its table of contents both indicate that it believes the testimony should be excluded.

2

imprimatur of 'expert' opinion by the court."   Breakers' Brief at 14, 15 (emphasis in original).

This argument is based on a misunderstanding of both the scope of opinions that are admissible as expert testimony and the Court's role with regard to expert testimony.  Rule 702 is not limited to opinion testimony based on *scientific* knowledge, but applies to testimony based on *any type* of reliable specialized knowledge that will assist the trier or fact.   Breakers does not dispute the obvious fact that Whitehorn, Rezac and Reed have acquired specialized knowledge regarding the various characteristics of an authentic Square D circuit breaker based upon their extensive experience working with the design and manufacture of Square D circuit breakers in the course of their employment with Square D; nor does it dispute the fact that their testimony is based upon this specialized knowledge.  This makes them "experts" as defined by Rule 702. Breakers does not explain how it believes the Court will brand their testimony as "expert" or otherwise; the Court's role does not include "branding" testimony or witnesses, but rather simply deciding whether the testimony is admissible under Rule 702 (or otherwise) and, if it is, permitting it to be offered at trial.  Indeed, this fact is recognized in the Court's Trial Procedures, which provide that the Court "will not declare a witness to be 'an expert.'"

Pioneer's argument with regard to the authenticity testimony is that Whitehorn, Rezac and Reed should not be permitted to testify that the accused breakers are counterfeit because "this testimony is tantamount to telling the jury that 'Square D's trademarks have been infringed.'"  Pioneer's Brief at 14.  Breakers similarly argues that to permit Whitehorn, Rezac and Reed to testify that the circuit breakers are not authentic would "usurp the jury's function in determining the ultimate issue of fact."  Breakers Brief at 18.  These arguments also are wholly without merit–and, indeed, perplexing–in light of the fact that Federal Rule of Evidence 704 expressly provides that "testimony in the form of an opinion or inference otherwise admissible is

not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Whitehorn, Rezac and Reed clearly may testify that they concluded, based upon their experience and knowledge, that the circuit breakers they inspected were not manufactured by Square D and therefore were not genuine Square D products.[2]

Finally, Pioneer argues the Whitehorn, Rezac and Reed should only be permitted to testify with regard to the circuit breakers that they inspected and should not be permitted to opine regarding  the authenticity of the circuit breakers that Breakers had already sold.  Square D agrees that the testimony of Whitehorn, Rezac and Reed will be so limited.

*Hazard Testimony*

Whitehorn, Rezac and Reed all offered the general opinion–with varying degrees of specificity and certainty–that the accused breakers pose a potential safety risk to the public.  The Defendants argue that these opinions do not satisfy Rule 702 because they are mere speculation and do not have sufficient factual support.

The Court determines that it need not make a pretrial determination whether this testimony is admissible under Rule 702.  The issue of whether the circuit breakers pose a risk to public safety is not relevant to any issue that will be decided by the jury, and to permit the jury to hear it would be unduly prejudicial regardless of how scientifically sound it is.  The testimony's only conceivable relevance in this case is to the issue of an appropriate remedy in the event

---

[2]To the extent that Pioneer's argument hinges on the specific implication of the word "counterfeit," that issue is the subject of a motion in limine and will be addressed in that context. So, too, will Pioneer's argument that Whitehorn, Rezac and Reed should not be permitted to refer to the accused breakers as the "counterfeit breakers" as if their inauthenticity had already been established.

Square D prevails on the issue of liability.[3]  Specifically, Square D seeks injunctive relief, and

one of the factors it must demonstrate to be awarded injunctive relief is that it will be irreparably

harmed if an injunction is not issued.  If Square D is successful at proving infringement, it will

certainly not be necessary for it to demonstrate a risk to public safety in order to show

irreparable harm and obtain injunctive relief.  *See, e.g., Gucci America, Inc. v. Daffy's Inc.*, 354

F.3d 228, 248 (3rd Cir. 2003) ("By proving infringement, Gucci proved irreparable injury as a

matter of law."); *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 986 (11th Cir.

1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans

would damage LS & CO's business reputation and decrease its legitimate sales. This court has

previously stated that such trademark infringement "by its nature causes irreparable harm.");

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) ("By

its very nature, trademark infringement results in irreparable harm because the attendant loss of

profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark

owner cannot adequately be compensated. Hence, irreparable harm flows from an unlawful

trademark infringement as a matter of law."); *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622,

625 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and

goodwill, a showing of irreparable injury can be satisfied if it appears that Kellogg can

demonstrate a likelihood of consumer confusion.").  However, Square D also argues that it

would be appropriate for the Court to order a recall of any counterfeit circuit breakers that

---

[3]Square D, citing *Syntex Labs., Inc. v. Norwich Pharmacol Co.,* 437 F.2d 566, 569 (2nd Cir. 1971), also argues that it is relevant to the issue of the appropriate standard to be applied in determining whether a likelihood of confusion exists.  The Court finds the distinction discussed in *Syntex*–assuming it is viable in the Seventh Circuit at all–clearly is irrelevant in a case involving allegedly counterfeit goods.

Breakers already has sold, and the issue of whether and to what extent the circuit breakers pose a risk to public safety would be relevant to that request.

Any determination regarding the propriety and scope of injunctive relief will be made entirely by the Court, not by the jury.  The Court determines that it will be better able to make a determination regarding the reliability of the hazard testimony after hearing the testimony and cross-examination thereof  at trial.  *See In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("Where the gatekeeper and the factfinder are one and the same-that is, the judge-the need to make such decisions prior to hearing the testimony is lessened" and the Court may "admit[] the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.").  This will be done outside of the presence of the jury, obviously, and the parties and their witnesses are admonished that there shall be no mention of this issue–that is, the potential danger of counterfeit circuit breakers or of circuit breakers that fail to meet the applicable UL standards–in front of the jury.

### Attorney Preparation of Expert Reports

Breakers objects to the fact that the expert reports of Whitehorn and Reed were written by counsel and argues that Whitehorn and Reed therefore failed to "prepare" their reports as required by Federal Rule of Civil Procedure 26(a)(2)(B).  The Court notes that Whitehorn, as an employee of Square D was not required to prepare a report at all.  Regardless, the Court is satisfied by the record as a whole–including the experts' and counsel's explanations regarding how the reports were prepared–that the opinions expressed within them are those of the experts, not of counsel.  Therefore the reports comply with the spirit, if not the letter, of the rule.  Breakers' motions are **denied** as to this issue.

SO ORDERED:    05/21/2009

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Thomas B. Bays
Norris Choplin & Schroeder LLP
tbays@ncs-law.com

Joel L. Dion
Blank Rome LLP
dion-j@blankrome.com

Robert David Epstein
Epstein Cohen Donahoe & Mendes
rdepstein@aol.com

Jonathan D. Jay
Leffert Jay & Polglaze P.A.
jjay@ljp-iplaw.com

Nicholas S. Kuhlmann
Leffert Jay & Polglaze, P.A.
nkuhlmann@ljp-iplaw.com

Brian W. Lewis
Wildman Harrold Allen & Dixon
lewis@wildman.com

Nelson A. Nettles
Norris Choplin & Schroeder LLP
nnettles@ncs-law.com

Nicole Nocera
Wildman, Harmed, Allen & Dixon LLP
nocera@wildman.com

Timothy D. Pecsenye
Blank Rome LLP
pecsenye@blankrome.com

James Brian Vogts
Wildman Harrold Allen & Dixon LLP
vogts@wildman.com

Edward Timothy Walker
Wildman, Harrold, Allen & Dixon LLP
walker@wildman.com

Philip A. Whistler
Ice Miller LLP
philip.whistler@icemiller.com