UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SQUARE D COMPANY, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|       vs. | )   CAUSE NO. 1:07-cv-806-WTL-JMS |
| | ) |
| BREAKERS UNLIMITED, INC., | ) |
| | ) |
|    Defendant. | ) |

**ENTRY REGARDING MOTION FOR ENTRY OF FINAL JUDGMENT FOR STATUTORY DAMAGES AND PERMANENT INJUNCTION AND BILL OF COSTS**

This cause is before the Court on the motion of Plaintiff Square D Company ("Square D") entitled Square D's Motion for Entry of Final Judgment for Statutory Damages and Permanent Injunction. The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion to the extent and for the reasons set forth below. Also before the Court is Square D's bill of costs, which the Court also addressed below.

### BACKGROUND

Square D alleged in this case, *inter alia*, that Defendant Breakers Unlimited, Inc., ("Breakers") infringed upon its trademark rights by selling and offering to sell counterfeit Square D circuit breakers. Square D's trademark infringement claim was tried to a jury in June 2009 and the parties have since completed rather extensive post-trial briefing. The parties agreed prior to trial that the Court would determine the amount of any monetary award in the event the jury found in favor of Square D.

Using a series of verdict forms, the jury was asked to arrive at a general verdict with regard to the issue of infringement; it did so, finding in favor of Square D. The jury also was

asked to determine the amount of damages suffered by Square D as a result of Breakers' infringement; it found the answer to be zero.[1]  The jury further was asked to determine the amount of profit Breakers obtained as a result of the infringement, which it found to be $52,787.00.  Finally, the jury was asked to return a special verdict pursuant to Federal Rule of Civil Procedure 49(a) with regard to whether Breakers acted with knowledge that the circuit breakers in question were counterfeit.[2]  *See* 15 U.S.C. § 1117(b).  To that end, the jury was asked to answer the following questions with regard to specific shipments from each of three suppliers from whom Square D alleged Breakers purchased counterfeit Square D circuit breakers (NABCO, Pioneer Breaker & Control Supply Company, and PBC Supply, LP):

- Do you find, based on a preponderance of the evidence, that the circuit breakers shipped to Breakers Unlimited [in the particular shipments] were counterfeit

---

[1] Square D argues that the jury's findings regarding damages and profits were merely advisory because the parties had stipulated that the Court would "serve as the trier of fact on the question of any monetary relief to be awarded under section 1117(c)."  Square D Reply at 2. Actually, what the parties stipulated to was that the Court would ultimately determine the amount of any monetary award in this case.  It was the Court's understanding that–absent an election by Square D to recover statutory damages– the jury would find (not advise regarding) the amount of damages and profits and the Court would then use those figures to arrive at the appropriate monetary award pursuant to § 1117(a).  This is entirely consistent with that statute, which expressly provides that "[t]he court shall assess such profits and damages *or cause the same to be assessed under its direction*" (emphasis added), and further gives the court discretion to enter judgment "according to the circumstances of the case" for any sum up to three times the amount found as actual damages, and also to increase or decrease the amount awarded "[i]f the court shall find that the amount of recovery based on profits is either inadequate or excessive." In other words, determining the amount of damages and profits, whether done by the court or by the jury under the court's direction, is just the starting point for arriving at an appropriate monetary award under § 1117(a).  The parties and the Court agreed that the jury would make factual findings with regard to the damages and profits component of the award, and those findings were not advisory, but rather are binding on the Court.

[2] Although Breakers objected to the particular language used in some of the questions, neither party objected to the use of the special verdict procedure.

2

>   products?
>
> •   Do you find, based on a preponderance of the evidence, that Breakers Unlimited offered to sell or sold the circuit breakers [it received in the particular shipments]?
>
> •   Do you find, based on a preponderance of the evidence, that Breakers Unlimited offered to sell or sold the circuit breakers [from the particular shipments] with willful blindness to their counterfeit nature?

As to each of the suppliers, the jury answered yes to the first two questions and no to the last question, thereby finding that Breakers had sold or offered for sale counterfeit circuit breakers but had not done so "with willful blindness to their counterfeit nature," and therefore had not done so knowingly.

Following the jury's verdict, Square D filed a notice of its election to recover statutory damages rather than actual damages pursuant to 15 U.S.C. § 1117(c)(1). Now before the Court is the issue of the amount of statutory damages to be awarded. In addition, Square D seeks a permanent injunction, the propriety of which also is now before the Court. Finally, Square D has submitted its Bill of Costs, which also is addressed below.

## DISCUSSION

The applicable version of 15 U.S.C. § 1117(c)(1)[3] provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by

---

[3] The statute was amended effective October 13, 2008, to double the range of authorized statutory damages; the range is now $1000 to $200,000. The Court finds no basis for applying the amendment retroactively to the relevant events in this case and therefore will not do so. However, the Court notes that its role is to arrive at a damages award that it considers just, and that the amount of its award would be the same even if the amendment did apply.

> the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of . . . not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

The parties agree that it was within Square D's right to elect statutory damages and that it is the Court's duty to fashion an award that it considers just within the parameters of § 1117(c)(1). However, the parties dispute almost every aspect of applying § 1117(c)(1) to the facts in this case. The Court therefore will examine and resolve each dispute in turn below.

### *Circuit Breakers Sold by Breakers to Maine Circuit Breaker*

As noted above, the jury was asked specifically whether certain shipments of circuit breakers received by Breakers from NABCO, Pioneer Breaker & Control Supply Company, and PBC Supply, LP, were counterfeit; it found that they were. Those circuit breakers were represented to be Square D QO 2020 circuit breakers. Evidence was also introduced at trial regarding circuit breakers that were sold by Breakers to Maine Circuit Breaker. Those circuit breakers were represented to be Square D QO 115 circuit breakers. The jury was not asked any questions regarding those circuit breakers.

Square D asks the Court to consider the QO 115 circuit breakers in calculating the statutory damages award. Breakers objects, arguing that

> [r]egardless of what evidence may have existed, there was never a finding by the jury that the "QO 115" circuit breakers were counterfeit or that Breakers Unlimited infringed Square D's trademarks with regard to the "QO 115" breakers. Absent a finding of infringement by the jury, the Court has no basis to enter judgment for damages relating to the "QO 115" circuit breakers.

Breakers Response at 11. Breakers cites no authority for this argument, and the Court does not find it persuasive. As discussed above, the parties stipulated prior to trial that the Court would

determine the amount of damages, if any, to be awarded in this case in the event that the jury found in favor of Square D. The jury entered a general verdict with regard to Breakers' liability for trademark infringement, finding in favor of Square D. The three sets of questions asked of the jury constituted a special verdict pursuant to Federal Rule of Civil Procedure 49(a) with regard to the issue of whether Breakers acted knowingly. The jury found that it did not, the effect of which, *inter alia*, was to eliminate the possibility of the Court awarding Square D treble damages pursuant to 15 U.S.C. § 1117(b). The issue of whether Breakers sold counterfeit circuit breakers to Maine Circuit Breaker is an element of the jury's general verdict on infringement. The parties' agreement that the Court would determine the appropriate damages award necessarily included an agreement that the Court would make any factual findings necessary for that determination that were not encompassed by the jury's specific findings. *Cf.* Federal Rule of Civil Procedure 49(a)(3) (when specific verdict is used, "a party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury," and the court may make a finding on the omitted issue).

There was ample evidence presented at trial that Maine Circuit Breaker purchased counterfeit QO 115 circuit breakers from Breakers, and the Court hereby so finds. The Court further finds that the sale of counterfeit QO 115 circuit breakers to Maine Circuit Breaker constituted trademark infringement by Breakers. The Court therefore will consider those circuit breakers in calculating the statutory damages award.

### *Number of "Types of Goods" and Marks at Issue*

Statutory damages are to be awarded "per counterfeit mark per type of goods" sold or

offered for sale. Breakers argues that all of the goods at issue in this case were circuit breakers and therefore only one "type of good" is involved. Square D argues that there are three types of goods at issue: the counterfeit QO 115 circuit breakers sold to Maine Circuit Breaker, the counterfeit QO 2020 circuit breakers purchased from NABCO, and the counterfeit QO 2020 circuit breakers purchased from Pioneer Breaker. The Court agrees with Square D that the counterfeit QO 115 circuit breakers are a distinct "type of good" from the counterfeit QO 2020 circuit breakers and hereby so finds. While both obviously are circuit breakers, as Breakers argues, they are distinct products that are not functionally interchangeable and therefore the Court finds that they constitute two "types of goods" as that term is used in the statute.

The Court disagrees with Square D's rather creative argument with regard to the QO 2020 circuit breakers, however. The fact that Breakers obtained counterfeit QO 2020 circuit breakers from two different suppliers and that the suppliers used different types of packaging does not transform them into different types of goods. The Court hereby finds that all of the counterfeit QO 2020 circuit breakers sold or offered for sale by Breakers constitute one "type of good" regardless of how and from whom Breakers obtained them. Accordingly, there are two "types of goods" at issue in this case.

With regard to the number of marks upon which statutory damages should be calculated, there are five Square D trademarks at issue: United States Trademark Registration Numbers 161,651,377 (D within a square), 650,436 (QO), 279,120 (Square D), 870,395 (VISI-TRIP) and 798,060 (QWIK-OPEN). There is no dispute that both the counterfeit QO 115 circuit breakers and their packaging and the counterfeit QO 2020 circuit breakers and their packaging that were sold or offered for sale by Breakers contained all five of these trademarks. Accordingly, the

6

Court finds that there were five counterfeit marks sold or offered for sale by Breakers on each of two types of goods.

### *Just Amount of Statutory Damages*

15 U.S.C. § 1117(c) requires an award statutory damages of not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed.[4] The range of available damages in this case, therefore, is between $5000 and $1,000,000. The only guidance the statute gives to a court charged with choosing an amount within that range is that the award should be what the court considers just. As aptly remarked in a recent decision, "courts have reached a wide range of results in assessing statutory damages . . . ." *Malletier v. Apex Creative Int'l Corp.*, ___ F.Supp.2d ___, 2010 WL 23320 at *5 n.4 (S.D.N.Y., Jan. 5, 2010) (collecting cases). Some courts have found it useful to borrow the following factors gleaned from cases that arise under an analogous provision relating to copyright infringement:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Id.* at *5 (internal quotation marks omitted) (citing *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir.1986) (copyright case); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp .2d 511, 520 (S.D.N.Y. 2004); *Louis Vuitton Malletier v. Whenu.com, Inc.*, 2007 WL

---

[4]The Court notes that this range is appropriate for cases that involve non-willful infringement; the applicable version of § 1117(c)(2) provides for an award of "not more than $1,000,000 per counterfeit mark per type of goods or services sold" in cases in which willful use of a counterfeit mark is found.

7

257717 at *4 (S.D.N.Y. 2007); *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F.Supp.2d 161, 166 (S.D.N.Y.1999)). Also borrowing from the analogous body of copyright law, it is important to remember that "the 'statutory damages rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct.'" *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002) (quoting *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952)). In other words, "the court must award an amount that will put the defendant on notice that it costs more to violate the [trademark] law than to obey it." *Dream Dealers Music v. Parker*, 924 F.Supp. 1146, 1153 (S.D. Ala. 1996) (copyright case).

In considering the factors that are relevant to this case, the Court first notes that the jury found that Breakers' profit from the sale of the counterfeit circuit breakers was $52,787.00 and that Square D did not prove that it suffered any damages as a result of the infringement. Breakers' profit equates to roughly $5300 per mark per type of good. Keeping in mind that "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers [and] would fall short of an effective sanction for enforcement of the [trademark] policy," *F. W. Woolworth Co.*, 344 U.S. at 233, the Court considers $5300 to be the "floor" for the range of appropriate statutory damages in this case.

The next relevant factor is whether Breakers' conduct was "innocent or willful." The jury found that Breakers did not act willfully, but that does not mean that Breakers' conduct was entirely "innocent." Based upon the evidence of record, and particularly the testimony of Breakers' own officers, the Court finds that Breakers was aware that operating within the "gray market" as it did, there was a risk of obtaining counterfeit circuit breakers, and yet it did not

8

provide its staff with any training on how to ferret out counterfeits and did not routinely inspect shipments it received with an eye toward determining whether they contained only genuine product. The Court also finds that Breakers was suspicious when it received the shipment from NABCO because the boxes the circuit breakers were shipped in were suspicious. Based upon these facts, the Court finds that Breakers' infringement was negligent, in that a reasonable company would have done more to avoid the known risk of passing on counterfeit products to its customers.

Also relevant to the appropriate statutory damages award is the nature of the products in this case. Circuit breakers perform an important safety function in the homes and businesses of those who purchase them. While the Court does not find that the particular counterfeit circuit breakers at issue in this case actually posed a significant safety hazard to those who purchased them, the fact remains that when Breakers sold the counterfeit circuit breakers–the source of which is unknown–it had no way of knowing whether they were manufactured properly and/or whether they had undergone appropriate safety testing, and therefore it had no way of knowing whether they posed a significant safety hazard to its customers. That means that someone who sells counterfeit circuit breakers does not simply risk violating trademark law; there is also the risk that the counterfeit circuit breakers will not perform as they should because they were poorly manufactured and that property damage or even personal injury or death could occur as a result. Given that risk, having appropriate procedures to minimize the risk of selling counterfeit circuit breakers is particularly important.

Given the facts of this case, and considering the relevant factors, the Court determines that the appropriate and just statutory damages award in this case is $10,000 per mark per type of

good sold, for a total of $100,000. This amount is substantial enough to encourage Breakers and others to take reasonable measures to avoid selling counterfeit goods, but is not so large as to be punitive.

### *Injunctive Relief*

In addition to statutory damages, Square D asks the Court to enter a permanent injunction, something which Breakers is generally amenable to. Having considered the evidence of record and the arguments of the parties, the Court hereby finds that Square D has suffered irreparable injury as the result of Breakers Unlimited's infringement of Square D's trademarks and that the available legal remedies are inadequate to protect Square D's trademark rights from further infringement. The Court further finds that the public interest will be served by entering a permanent injunction and an injunction is warranted considering the balance of hardships between Square D and Breakers. With regard to the particular terms of the injunction, Breakers disagrees with the language proposed by Square D in several respects.

First, Square D asks that Breakers be enjoined from "acquiring, distributing, selling, offering to sell and otherwise using in commerce any products that display counterfeit versions [of] the trademarks registered to Square D." Breakers–without explanation–agrees only to refrain from *knowingly* doing so. In light of the fact that the law makes Breakers liable for using counterfeit trademarks regardless of whether it does so knowingly, the Court finds that Square D is entitled to the injunctive relief it seeks.

Next, Square D proposes the following provision:

In the event that Breakers Unlimited acquires information relating to possible trafficking in potentially counterfeit versions of Square D products or information relating to the existence of potentially counterfeit versions of Square D products, Breakers Unlimited shall immediately provide the information, in writing, to the

>U.S. Department of Homeland Security, Customs and Border Protection, 7100 Pierson Drive, Indianapolis, Indiana 46241-4233 and to the Square D Company, 1601 Mercer Road, Lexington, Kentucky 40511, c/o Tracy Garner.

Breakers–again without explanation–proposes that it only be required to "notify federal law enforcement officials [not Square D] of *credible* information it receives in connection with criminal counterfeiting activities involving Square D products" and only "[t]o the extent required by applicable laws." The Court agrees with Breakers that its reporting obligation should be limited to information it believes to be credible, and will include that requirement in the language of the injunction. However, the Court disagrees that Breakers' obligation should be limited to that required by law, and also finds that it is reasonable for Breakers also to be required to notify Square D so that Square D can have the opportunity to investigate and protect its trademark rights.

Finally, ¶ 4 of Square D's proposed injunction requires Breakers to, *inter alia*, send to all of its customers to whom it sold what were represented to be Square D QO 2020 circuit breakers between May 25, 2005, and April 7, 2006, a notice entitled "Notice of Potentially Hazardous Counterfeit Circuit Breakers," and also to include the notice on its website. The notice states that the circuit breakers may be counterfeit; that the counterfeit circuit breakers were not approved by the Underwriters Laboratory ("UL") and failed certain UL testing; and that they are potentially hazardous. It also notes that no actual damage or injury has been attributed to them to date. While the uncontroverted evidence at trial established that some of the counterfeit circuit breakers failed certain UL tests and that the failures were "Type A" failures which, by definition, means that the circuit breakers in question posed a "risk of fire, electrical shock, or destruction to other equipment," there is no evidence that quantifies that risk in any way.

Therefore, the Court does not believe that the limited evidence of record is sufficient to justify the inclusion of a customer notice provision in the permanent injunction to be issued in this case. The Court also notes that Square D has notified the Consumer Product Safety Commission ("CPSC") about the counterfeit circuit breakers and the fact that they failed UL testing. The Court believes that the CPSC is in a far better position than the Court–given the limited evidence of record–to determine whether the safety risk posed by the circuit breakers is substantial enough to warrant contacting Breakers' customers to warn them of the risk.

### *Square D's Bill of Costs*

Square D has filed a Bill of Costs in which it seeks costs in the amount of $24,683.56. Breakers has not filed an objection to the entry of costs in that amount. Accordingly, the judgment entered in this case will include such an award of costs to Square D.

### CONCLUSION

For the reasons set forth above, the Court awards Square D statutory damages in the amount of $100,000.00. The Court also **GRANTS IN PART** Square D's request for entry of a permanent injunction, which will be entered this date. Finally, the Court **GRANTS** Square D's request for costs in the amount of $24,683.56.

SO ORDERED: 01/25/2010

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification